**No. 24-12549**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

JONATHAN BURTON,

*Plaintiff-Appellant,*

vs.

DR. G. ESPINO,

*Defendant-Appellee*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
(HON. WENDY W. BERGER)
NO. 3:21-CV-597

---

## OPENING BRIEF OF APPELLANT

---

Bryan Lutz
Calvin Hart
ALSTON & BIRD LLP
1201 West Peachtree Street, NE
Atlanta, GA 30309-3424
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
bryan.lutz@alston.com
calvin.hart@alston.com

*Court-Appointed Counsel for*
*Appellant Jonathan Burton*

*Jonathan Burton v. Dr. G. Espino*
Case No. 24-12549

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-2(a), Appellant Jonathan Michael Burton respectfully submits that to the best of counsel's knowledge, the following is a complete list of all trial judges, attorneys, persons, association of persons, firms, partnerships, or corporations that have an interest in the outcome of this appeal:

1. Alston & Bird LLP — Law firm representing Appellant

2. Berger, Hon. Wendy W. — United States District Judge

3. Borland, Marie A. — Counsel for Appellee

4. Burton, Jonathan M. — Appellant

5. Coates, Jacob — Counsel for Appellee

6. Davis, Hon. Brian J. — United States District Judge

7. Espino, Gonzalo, M.D. — Appellee

8. Hart, Calvin — Counsel for Appellant

9. Hill, Ward & Henderson, P.A. — Law firm representing Appellee

10. Hughes, David William — Counsel for Appellee

11. Lutz, Bryan — Counsel for Appellant

12. Richardson, Hon. Monte C. — United States Magistrate Judge

13. Shapiro, Ethen — Counsel for Appellee

14. Sigalos, Jason — Counsel for Appellant

*Jonathan Burton v. Dr. G. Espino*
Case No. 24-12549

No publicly traded company or corporation has an interest in the outcome of the case or appeal.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellant Jonathan Michael Burton respectfully requests oral argument. This appeal is not frivolous, the dispositive issues have not been authoritatively decided, the analysis involves a complicated factual backdrop, and the panel's decisional process would be aided by oral argument. Fed. R. App. P. 34(a).

# <u>TABLE OF CONTENTS</u>

**Page**

CERTIFICATE OF INTERESTED PERSONS .............................................C-1 of 2

STATEMENT REGARDING ORAL ARGUMENT ............................................... i

TABLE OF CONTENTS................................................................... ii

TABLE OF AUTHORITIES .............................................................. iv

STATEMENT OF JURISDICTION................................................................ viiii

STATEMENT OF THE ISSUES..................................................................1

STATEMENT OF THE CASE....................................................................2

STATEMENT OF FACTS ....................................................................3

    I.     The Beatings.....................................................................3

    II.    Burton's Initial Consultation with Espino...............................................4

    III.   Evidence of Burton's Injuries .......................................................4

    IV.   Procedural History.................................................................8

STANDARDS OF REVIEW ..................................................................10

SUMMARY OF THE ARGUMENT ............................................................11

ARGUMENT AND CITATIONS OF AUTHORITY .........................................12

    I.     Burton's Head Claim...........................................................12

         A.    Burton's Head Injuries Presented an Objectively Serious Medical Need .................................................................13

         B.    Espino was Subjectively Aware of, Disregarded, and Responded Unreasonably to a Risk of Serious Harm from Burton's Head Injuries ...............................................................14

            1.    Record Evidence Established Espino had Subjective Knowledge of a Risk of Serious Harm to Burton ..........15

            2.    Record Evidence Established Espino Disregarded this Risk of Serious Harm to Burton .....................................16

3. Espino's Conduct, on the Record, Amounted to Subjective Recklessness and was not Reasonable .........17

C. Espino's Conduct Caused Burton Harm ...................................18

II. Burton's First Amendment Retaliation Claim ....................................21

A. Espino Twice Denied Medical Care Based on Burton's Grievances, Which is Likely to Deter a Person of Ordinary Firmness from Engaging in Constitutionally Protected Speech ........................................................................................22

B. The District Court Erred by Finding the Evidence Did Not Establish Espino's Retaliatory Motive ......................................24

III. Burton's Finger Claim.........................................................................25

A. Burton's Finger Injuries Presented Objectively Serious Medical Needs........................................................................................25

B. A Reasonable Jury Could Conclude Espino Denied Needed Medical Care for Non-Medical Reasons ..................................26

1. Record Evidence Established Espino Had Subjective Knowledge of Burton's Developing Finger Deformities ........................................................................................27

2. Record Evidence Established Espino Disregarded Burton's Developing Finger Deformities.......................27

3. Record Evidence Indicates Espino Engaged in Subjective Recklessness by Denying Burton's Physical Therapy Referral for Non-Medical Reasons...................................28

C. Espino's Conduct Caused Burton Harm ...................................29

CONCLUSION .....................................................................................................30

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Barker v. Norman*,
 651 F.2d 1107 (5th Cir. July 1981) .....................................................................10

*Bennett v. Hendrix*,
 423 F.3d 1247 (11th Cir. 2005) .........................................................................23

*Boatman v. Sawyer*,
 No. 21-10747, 2021 U.S. App. LEXIS 32583 (11th Cir. Nov. 2, 2021) ............23

*Brooks v. Powell*,
 800 F.3d 1295 (11th Cir. 2015) ....................................................................19, 20

*Brown v. Hughes*,
 894 F.2d 1533 (11th Cir. 1990) ....................................................................13, 20

*Christmas v. Nabors*,
 76 F.4th 1320 (11th Cir. 2023) .....................................................................21, 23

*Estelle v. Gamble*,
 429 U.S. 97 (1976) .............................................................................................19

*Farmer v. Brennan*,
 511 U.S. 825 (1994) ...........................................................................................15

*Feliciano v. City of Mia. Beach*,
 707 F.3d 1244 (11th Cir. 2013) ...................................................................10, 29

*Gilmore v. Hodges*,
 738 F.3d 266 (11th Cir. 2013) ...........................................................................25

*Goebert v. Lee Cnty.*,
 510 F.3d 1312 (11th Cir. 2007) .........................................................................19

*Hall v. Adm'r, Fla. Civ. Commitment Ctr.*,
 No. 21-13160, 2022 U.S. App. LEXIS 25206 (11th Cir. Sept. 8, 2022) ...........24

*Heyer v. U.S. Bureau of Prisons*,
 849 F.3d 202 (4th Cir. 2017) .............................................................................14

*Hoffer v. Fla. Dep't of Corr.*,
    973 F.3d 1263 (11th Cir. 2020) ........................................................29

*Johnson v. Lewis*,
    83 F.4th 1319 (11th Cir. 2023) ........................................................18

*K.A. v. Fulton Cnty. Sch. Dist.*,
    741 F.3d 1195 (11th Cir. 2013) ........................................................10

*McElligott v. Foley*,
    182 F.3d 1248 (11th Cir. 1999) ........................................................19

*Moms for Liberty v. Brevard Pub. Sch.*,
    118 F.4th 1324 (11th Cir. 2024) ......................................................20

*O'Brien v. Mich. Dep't of Corr.*,
    592 F. App'x 338 (6th Cir. 2014) .....................................................23

*Patel v. Lanier Cnty.*,
    969 F.3d 1173 (11th Cir. 2020) ........................................................13

*Rodriguez v. Sec'y of the Dep't of Corr.*,
    508 F.3d 611 (11th Cir. 2007) ..........................................................18

*Sears v. Robert*,
    922 F.3d 1199 (11th Cir. 2019) ...................................................10, 24

*Serendipity At Sea, LLC v. Underwriters at Lloyd's of London Subscribing
    to Policy No. 187581*,
    56 F.4th 1280 (11th Cir. 2023) ...........................................................2

*Smith v. Abdur-Rahman*,
    No. 2:13-cv-738, 2015 U.S. Dist. LEXIS 3984 (E.D. Cal. Jan. 13, 2015)..........6

*Stalley v. Cumbie*,
    124 F.4th 1273 (11th Cir. 2024) ...................................13, 15, 19, 26

*Tolan v. Cotton*,
    572 U.S. 650 (2014)....................................................................10, 24

*United States v. Stein*,
    881 F.3d 853 (11th Cir. 2018) (en banc) .........................................10

*Williams v. Radford*,
  64 F.4th 1185 (11th Cir. 2023) ............................................................................23

**RULES**

Eleventh Cir. R. 32-4 ............................................................................31

Fed. R. App. P. 32(a)(5) and (6) ............................................................................31

Fed. R. App. P. 32(a)(7)............................................................................31

Fed. R. App. P. 32(f)............................................................................31

Fed. R. Civ. P. 54(c)............................................................................20

**STATUTES**

28 U.S.C. § 1291 ............................................................................ vii

28 U.S.C. § 1331 ............................................................................ vii

42 U.S.C. § 1983 ............................................................................ vii, 10, 18, 20

## **STATEMENT OF JURISDICTION**

The United States District Court for the Middle District of Florida had subject matter jurisdiction over Appellant Jonathan Michael Burton's 42 U.S.C. § 1983 action pursuant to 28 U.S.C. § 1331. This Court has appellate jurisdiction under 28 U.S.C. § 1291 from the District Court's July 24, 2024 entry of final judgment in favor of Appellee Dr. G. Espino based on Appellant Burton's timely July 31, 2024 notice of appeal. (Docs. 115, 117).

## <u>STATEMENT OF THE ISSUES</u>

1. Whether the district court erred as to Burton's medical deliberate indifference claim as to his head injury, where viewing all evidence in the light most favorable to Burton, record evidence established that Espino provided no meaningful care after Burton, who had a history of seizures, was beaten twice by prison officers, sustained a head laceration, suffered two seizures from this head trauma, and was in great pain.

2. Whether the district court erred as to Burton's First Amendment retaliation claim, where it failed to consider as evidence Burton's verified second amended complaint, which presented, based on Burton's first-hand knowledge, uncontested statements made by Espino, indicating Espino twice denied Burton medical care expressly because of grievances that Burton previously filed.

3. Whether the district court erred as to Burton's medical deliberate indifference claim as to his finger injuries, where record evidence showed Burton had developing finger deformities and Espino denied a physical therapy referral from Burton's orthopedic doctor for non-medical reasons.

## STATEMENT OF THE CASE

The crux of this appeal is the district court's failure to appreciate the evidentiary weight of Appellant Jonathan Michael Burton's verified second amended complaint (the "Verified Complaint") when ruling on Appellee Dr. Gonzalo Espino's motion for summary judgment.  Burton's Verified Complaint detailed the brutal beatings he sustained at the hands of prison officials, set forth key facts about his medical history and the severity of his injuries following these beatings, and described express and uncontested retaliatory statements Espino made when Burton sought treatment—statements that show Espino's subjective retaliatory motivation in denying Burton adequate medical care.

By failing to consider this critical evidence, the district court necessarily did not view the record in the light most favorable to Burton in ruling on his medical deliberate indifference and First Amendment retaliation claims. The district court did not need to "undertake the proverbial hunt for the Red October submarine in the Atlantic Ocean in order to find a disputed issue of fact in the summary judgment record." *See Serendipity At Sea, LLC v. Underwriters at Lloyd's of London Subscribing to Policy No. 187581*, 56 F.4th 1280, 1287 (11th Cir. 2023). Instead, the district court was merely required to appreciate that Burton's evidence at summary judgment included his Verified Complaint—a document the district court otherwise cited extensively, but did not credit, in its summary judgment order.

2

The record alongside Burton's Verified Complaint established genuine disputes of material fact that precluded summary judgment to Espino as to each of his claims. The district court's summary judgment order is due to be reversed.

## STATEMENT OF FACTS

### I. The Beatings

On April 21, 2020, Burton was beaten twice by prison officers. As described in his Verified Complaint, two officers initially attacked Burton—who has epilepsy and a history of seizures—by punching, stomping, and hitting Burton twice on the head with a radio while he was in full restraints. (Doc. 22 at 13, 16). Burton sustained lacerations and felt as though his left ring finger had been snapped during the attack. (*Id.* at 13). A short time later, Burton refused to go into his cell after seeing a nurse, telling the prison officers that he had epilepsy, his head hurt, and he was in unbearable pain. (*Id.*). Four officers proceeded to beat Burton again, reopening his head wound. (*Id.* at 13-14).

After the two beatings, the record documents that Burton sustained at least a "1.5 cm laceration" on the left side of his head, a ".25 cm abrasion" on his left middle finger, and a ".5 cm abrasion" on his left ring finger." (Doc. 112-4 at 14). Burton later noted that his right index finger had also been injured but was not properly documented. (Doc. 22-2 at 4). Just after the second beating, Burton experienced two

seizures, which were witnessed by three inmates who later submitted declarations to that effect. (Doc. 22 at 14; *see also* Doc. 82-1 at 2-4).

## II.    Burton's Initial Consultation with Espino

Espino saw Burton on April 23, 2020. As soon as the "consultation" started, Espino stated, "I got your grievances!" and told a nearby officer "he's done." (Doc. 22 at 14). Burton pleaded for care, explaining that he had experienced two seizures from the beatings and was in pain. (*Id.*). But Espino replied, "Think about that next time you write a grievance[.] Get him out of here!" (*Id.*). The entire interaction lasted, at most, 90 seconds. (*See id.* (stating 60 seconds); *see also* Doc. 22-3 at 5 (stating 90 seconds)). Beyond a blanket denial of Burton's allegations in his unverified answer, Espino never disputed making these statements. (*See generally* Docs. 73, 112). Espino subsequently ordered x-rays of Burton's left hand but did not order a CAT scan or MRI scan for Burton's head. (*See* Doc. 112-8).

## III.    Evidence of Burton's Injuries

Burton has a history of epilepsy and grand mal seizures, has been hospitalized for seizures in the past, and has been on medication for "seizure disorder" since at least April 2015. (Doc. 22 at 13, 16; Doc. 112-19). On April 24, 2020, Burton filed a grievance noting Espino provided no pain medication for his injuries and stating that "my head has been bust open and I keep catching headaches[.] I'm in great pain[.] Every day I'm bleeding on my pillow cases." (Doc. 22-3 at 5). On April 27,

2020, Burton filed a sick-call, again emphasizing his head hurt from the beatings and he could not sleep. (Doc. 22-2 at 3). After these complaints, on April 28, 2020, Burton was seen by a nurse, complained that his "head is hurting really badly," and was told "Tylenol/Ibu [was] available on [the] wing." (Doc. 112-12 at 1-2).

Over the next four years, Burton had several x-rays of his hands, with varying results. For example, on April 27, 2020, Burton received his first hand x-ray. The results of the report in the record concluded, "The overall bony mineralization appears normal. There is no fracture or dislocation. Soft tissue structures appear unremarkable." (Doc. 112-10 at 2). Similar results were reported in the record for x-rays taken on October 30, 2020 (*see* Doc. 112-32), June 6, 2023 (*see* Doc. 112-53), December 15, 2023 (*see* Doc. 112-54 at 1), and March 8, 2024 (*see* Doc. 112-56). However, a July 27, 2020 x-ray report in the record noted a "[n]ew right finger PIP[1] joint flexion deformity" on Burton's left hand and that "[f]lexion[]of the index and long finger PIP joints are noted" on Burton's right hand. (Doc. 112-26). And a record copy of the May 30, 2023 x-ray of Burton's hands was interpreted as showing a "[t]iny bone fragment or calcification medial to distal left fourth proximal phalanx, but no fracture or dislocation in left hand."[2] (Doc. 112-52 at 1).

---

[1] As noted by the district court, "PIP" stands for "proximal interphalangeal." (Doc. 114 at 4).

[2] Espino and the district court stated that around the time of his May 2023 x-ray, Burton refused to have a "splint" placed on his right finger. (Doc. 112 at 13; Doc.

Beyond just x-ray results, Burton's medical records indicate varying levels of finger deformities. For example, a September 15, 2020 report indicated Burton was able to bend and straighten the joints on his left hand. (Doc. 22-1 at 7). The very next day, on September 16, 2020, a report written by Dr. R. Laubaugh indicated (1) under the "Objective Data" field that Burton's left "ring PIP has about 45 [degrees] flexion contraction, I cannot passively extend," his right "index PIP has about 40 [degrees] flexion contraction . . . cannot passively extend"; and (2) under the "Plan" field that Burton should receive an "ortho referral." (Doc. 112-30). Dr. Laubaugh also provided a provisional diagnosis of "Boutonniere deformity" on Burton's right index and left ring fingers.[3] (Doc. 112-31 at 1). Similarly, an October 30, 2020 report written by orthopedist Dr. J. Ryan—and signed by Espino—indicated that Burton had "contracture of PIP [left] ring + [right] index PIP joints" and recommended "Hand/Physical therapy to regain [range of motion]" to those fingers. (Doc. 112-31 at 2). Further, a July 17, 2020 medical report indicates (1) under the "Subjective Data" field that Burton complained he was "unable [to] use hands and this is effecting quality of life," (2) under the "Objective Data" field that "[r]ight hand has

---

114 at 17 (citing Doc. 112-54 at 3)).  In fact, the medical records show Burton refused to have a "splinter" removed from his right finger.  (Doc. 112-54 at 2-3).

[3] "A boutonniere deformity occurs when a tear in the tendon sheath, which looks like a buttonhole, causes the finger to be bent down at the middle joint and bent back at the end joint." *Smith v. Abdur-Rahman*, No. 2:13-cv-738, 2015 U.S. Dist. LEXIS 3984, *8-9 n.6 (E.D. Cal. Jan. 13, 2015).

multiple phalanges deformed & weak strength," while the "left hand has 3rd phalanges deformed," and (3) under the "Plan" field that x-rays were ordered for "both hands to [rule out] deformities" and recommended "physical therapy to assist movement of hands" if deformities were present. (Doc. 113-1 at 2; *see also* Doc. 113-1 at 3 (July 27, 2020 x-rays noting deformities)).

Throughout this time, Burton's head pain and finger deformities endured. Six days after the beatings, Burton reported "I am in great pain[.] I can't sleep at nights due to my head hurting . . . . I wasn't prescribed any pain medication." (Doc. 22-2 at 3). On September 15, 2020, Burton reported he could not "make a fist with [his] left or right hands." (*Id.* at 9). Despite this, at a November 3, 2020 consultation with Burton, Espino denied Dr. Ryan's physical therapy referral, indicating in a report that Burton did not have an "approved condition." (*See* Doc. 112-34). However, Burton's Verified Complaint states that at this consultation, Espino denied physical therapy *expressly because of* grievances Burton had filed, stating, "I told you about writ[]ing those grievances on me[.] [G]et out of my office." (Doc. 22 at 15).[4]

Notably too, despite Espino's knowledge of Burton's head trauma and seizures on April 21, 2020, and despite knowing that Burton was prescribed seizure

---

[4] From January to April 2024, Burton received physical therapy for his hands. (Docs. 112-57, 112-58). From April 15 to 30, 2024—the final physical therapy sessions contained in the record—Burton still reported that his left ring finger would not "straighten out." (Doc. 112-57 at 1-5).

medication, this November 3, 2020 report—six months after the beatings—is the first instance in the record that Espino ordered labs to determine whether Burton was taking his Keppra prescription for his seizures. (Doc. 112-34 ("Seizure prescriber[.] No keppra levels . . . . New labs ordered."); *see also* Doc. 112-16 (May 11, 2020 report signed by Espino refilling Burton's levetiracetam prescription); Doc. 114 at 10 n.5 (noting the generic form of Keppra is "Levetiracetam")).

## IV.  <u>Procedural History</u>

Proceeding *pro se* in the district court, Burton ultimately filed the operative Verified Complaint raising three claims against Espino: Eighth Amendment medical deliberate indifference claims for Espino's failure to treat Burton's (1) head injuries and (2) finger injuries, and (3) a First Amendment retaliation claim for withholding medical treatment for filing grievances. (Doc. 22; *see also* Doc. 68 at 13 (construing the Verified Complaint as raising a First Amendment retaliation claim)).[5]

Espino filed a motion for summary judgment as to each claim, which the district court granted. (Docs. 112, 114). As to Burton's Eighth Amendment head claim, the district court concluded "Espino regularly refilled Plaintiff's seizure medication, ordered Plaintiff to undergo regular lab testing, and monitored Plaintiff's neurological symptoms in the chronic illness clinic." (Doc. 114 at 24).

---

[5] Burton sought leave to amend the Verified Complaint as to his First Amendment retaliation claim, (*see* Doc. 69), which the district court granted to the extent it had already construed the Verified Complaint as raising such a claim, (*see* Doc. 70).

The district court also found that Burton failed to present evidence he suffered "an increase in seizures or any other harm" as a result of Espino's conduct. (*Id.*).

Regarding Burton's First Amendment retaliation claim, the district court rejected Burton's argument that Espino denied his finger physical therapy referrals or other treatment out of retaliation, finding instead that "the medical records confirm" Espino provided care and deemed physical therapy to be not medically necessary. (*Id.* at 25).

As to Burton's Eighth Amendment finger claim, the district court found that, even assuming Burton's finger injuries amounted to a serious medical need, the record did not indicate Espino acted with deliberate indifference. (*Id.* at 21). In particular, the district court concluded that Espino's denial of Burton's referrals for physical therapy constituted "a difference in medical opinions," which could not support Burton's Eighth Amendment claim. (*Id.* at 22). And while the district court noted Burton's May 2023 x-ray showed a "tiny bone fragment or calcification," the district court found that it was "unclear when Plaintiff's finger or hand injury progressed to that level or what caused its decline." (*Id.*). Burton timely appealed. (*See* Docs. 115, 117).

## STANDARDS OF REVIEW

This Court reviews de novo an order granting summary judgment on 42 U.S.C. § 1983 claims. *K.A. v. Fulton Cnty. Sch. Dist.*, 741 F.3d 1195, 1210 (11th Cir. 2013). This Court is "required to view the evidence and all factual inferences therefrom in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-movant." *Feliciano v. City of Mia. Beach*, 707 F.3d 1244, 1248 (11th Cir. 2013) (quotation marks omitted). As a result, where the facts evidenced by the parties conflict, this Court "must credit the nonmoving party's version." *Id.* (quotation marks omitted and alteration adopted). Indeed, a district court errs when it "credit[s] the evidence of the party seeking summary judgment and fail[s] properly to acknowledge key evidence offered by the party opposing that motion." *Tolan v. Cotton*, 572 U.S. 650, 659 (2014).

"[A] verified complaint serves as the equivalent of an affidavit for purposes of summary judgment." *Sears v. Robert*, 922 F.3d 1199, 1206 (11th Cir. 2019) (citing *Barker v. Norman*, 651 F.2d 1107, 1115 (5th Cir. July 1981)). This Court's "cases correctly explain that a litigant's self-serving statements based on personal knowledge or observation can defeat summary judgment." *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) (en banc).

## SUMMARY OF THE ARGUMENT

The district court erred by failing to view the record evidence in the light most favorable to Burton, including by failing to treat Burton's Verified Complaint as evidence at summary judgment. As set forth in the Verified Complaint, Burton was brutally beaten by prison officials multiple times, sustaining several injuries, including to his head and fingers. Burton has a history of epilepsy, and following repeated blows to his head during these beatings, Burton sustained a laceration to his head that required sealing with Dermabond and suffered two seizures—which were also documented in the record by medical reports and declarations from three separate prison inmates who witnessed the seizures firsthand.

Burton's head injury presented an objectively serious medical need, of which Espino was subjectively aware, and for which Espino acted unreasonably. Burton told Espino about his head injury, that he was in pain, and that he had suffered two seizures. Yet, Espino, who was already aware of Burton's epilepsy, kicked Burton out of his office after just 90 seconds due to grievances Burton had filed, stating "I got your grievances! [H]e's done." (Doc. 22 at 14). When Burton pleaded for care, Espino responded, "Think about that next time you write a grievance. Get him out of here!" (*Id.*). Espino ordered no scans of Burton's head and provided no meaningful treatment after this approximately 90-second consultation.

11

In the Verified Complaint, Burton indicated that on two occasions—April 23 and November 3, 2020—Espino withheld treatment for Burton *expressly because* Burton had filed grievances. In addition to Espino's April 23 comments highlighted above, on November 3, Espino denied Burton's orthopedist's referral for finger physical therapy, stating "I told you about writ[]ing those grievances on me[,] get out of my office." (*Id.* at 15). Beyond a blanket denial in his unverified answer of Burton's allegations, Espino *never* disputed making these statements. (*See generally* Docs. 73, 112). Espino's refusal to provide adequate care following Burton's beatings and seizures, and his denial of Burton's finger physical therapy referral— simply because Burton filed constitutionally protected grievances—would deter a person of ordinary firmness from engaging in protected speech.

Finally, there were genuine disputes of material fact that precluded summary judgment on Burton's medical deliberate indifference claim regarding his fingers, including the severity and cause of Burton's finger deformities and Espino's subjective motivation in denying Burton's orthopedist's physical therapy referral.

## ARGUMENT AND CITATIONS OF AUTHORITY

### I.    Burton's Head Claim

A claim for medical deliberate indifference requires the inmate to satisfy both an objective inquiry (as to the plaintiff's medical need) and subjective inquiry (as to the defendant's indifference), as well as establish a necessary causal link between

the challenged conduct and his injury. *See Stalley v. Cumbie*, 124 F.4th 1273, 1283 (11th Cir. 2024). Genuine disputes of fact existed as to each element.

### A.  Burton's Head Injuries Presented an Objectively Serious Medical Need

The record at summary judgment viewed in the light most favorable to Burton established he presented to Espino's office with an objectively serious medical need. "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Patel v. Lanier Cnty.*, 969 F.3d 1173, 1189 (11th Cir. 2020) (quotation marks omitted). "Evidence of recent traumatic injury [] has generally been sufficient to demonstrate a serious medical need." *Brown v. Hughes*, 894 F.2d 1533, 1538 n.4 (11th Cir. 1990).

Burton, an inmate with a history of epilepsy and seizures, averred that he was punched, stomped, and hit on the head with a radio by prison officers, resulting in him suffering two seizures that were documented by three separate firsthand witnesses.[6] (Doc. 22 at 13-14; *see* Doc. 82-1 at 2-4). Further, Burton continued to suffer following the beatings and his 90-second consultation with Dr. Espino. On April 24, 2020, Burton stated, "I'm on seizure medication for a head injury. Now

---

[6] The district court noted that Burton's motion for summary judgment expressly relied on these inmate declarations in support of his head claim but concluded "Plaintiff has provided no such evidence." (Doc. 114 at 23 n.8 (citing Doc. 113 at 18)). These declarations were contained in Document 82-1 at pages 2-4.

my head has been bust open and I keep catching headaches. I'm in great pain. Every day I'm bleeding on my pillow cases[.]" (Doc. 22-3 at 5). On April 27, 2020, Burton reported, "It should be noted I am in great pain. I can't sleep at nights due to my head hurting . . . . I wasn't prescribed any pain medication." (Doc. 22-2 at 3).

Espino did not genuinely dispute this evidence at summary judgment. Instead, he minimized Burton's injuries by characterizing them as "a minor cut treated with Dermabond." (Doc. 112 at 22). However, Burton's evidence shows he did not present to Espino's office with only a "minor cut," but as an inmate with a history of seizures, who was in great pain, and who had suffered multiple seizures just two days earlier after sustaining visible head trauma. This evidence was sufficient to create at least a genuine dispute that Burton's injuries were objectively serious. *See, e.g.*, *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 210 (4th Cir. 2017) ("Heyer has suffered multiple seizures during his confinement, and we have little difficulty concluding that seizures are sufficiently serious to require medical treatment.").

Accordingly, viewed in the light most favorable to Burton, the record established he had an objectively serious medical need.

### B. Espino was Subjectively Aware of, Disregarded, and Responded Unreasonably to a Risk of Serious Harm from Burton's Head Injuries

The subjective inquiry requires that the prison official "(1) had subjective knowledge of a risk of serious harm, (2) disregarded that risk, and (3) engaged in

conduct that amounts to subjective recklessness." *Stalley*, 124 F.4th at 1283 (quotation marks omitted). This third prong requires "that the defendant actually knew that his conduct—his own acts or omissions—put the plaintiff at substantial risk of serious harm." *Id.* (quotation marks omitted). Still, the question of "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). Genuine disputes existed at summary judgment regarding all three facets of this subjective inquiry.

### 1.    Record Evidence Established Espino had Subjective Knowledge of a Risk of Serious Harm to Burton

Viewed in the light most favorable to Burton, the record indicates Espino was subjectively aware of a risk of serious harm. At the initial consultation on April 23, 2020, Burton informed Espino about his head trauma, seizures, and that he was in pain. (*See* Doc. 22 at 14). Also on April 23, Espino signed (1) medical reports cataloging Burton's injuries from the beatings just two days earlier and (2) a report noting Burton's history of seizures. (Doc. 112-4 at 14; Doc. 112-5 at 1). Espino did not dispute that he was aware of these facts. (*See generally* Doc. 112). Evidence of Burton's history of seizures, head trauma, two recent seizures, and head pain created a genuine dispute as to whether Espino was aware of a risk of serious harm to Burton.

2. <u>Record Evidence Established Espino Disregarded this Risk of Serious Harm to Burton</u>

Despite his knowledge of the above facts, Burton's Verified Complaint established that Espino responded to Burton's injuries by kicking Burton out of his office due to grievances Burton had filed, stating "I got your grievances! [H]e's done." (Doc. 22 at 14). After Burton pleaded for care, noting that he was "in pain" and "had two seizures," Espino replied, "Think about that next time you write a grievance[.] Get him out of here!" (*Id.*). The entire consultation lasted roughly 90 seconds. (*See id.*; *see also* Doc. 22-3 at 5). Tellingly, after this brief "consultation," Espino ordered x-rays for Burton. (*See* Doc. 112-8). But conspicuously absent from this request was any testing for Burton's head. (*See id.* (indicating the boxes for head "CAT SCANS" and "MRI SCANS" were left unmarked); *see also Melton v. Abston*, 841 F.3d 1207, 1230 (11th Cir. 2016) ("[T]he right to medical care may include diagnostic tests known to be necessary, not just medicinal and surgical care." (quotation marks omitted)). Based on this record evidence, a reasonable jury could find Espino disregarded a serious risk of harm to Burton by failing to provide any treatment in the wake of Burton's head trauma and seizures.

In his summary judgment motion, Espino argued he acted reasonably in response to Burton's head injuries because he (1) indicated on a form for the April 23, 2020 consultation that Burton had "no deficits/conscious, coherent/alert" and was "ambulatory, (*see* Doc. 112-7), and (2) on November 3, 2020, ordered labs for

16

the level of seizure medication in Burton's blood, (*see* Doc. 112-34). But this April 23 form is contradicted by Burton's Verified Complaint, which indicates Espino immediately kicked Burton out of his office without providing care for or evaluation of Burton's injuries. (Doc. 22 at 14). And the six-month gap between the April 23 initial consultation and the November 3 lab order hardly indicates Espino rendered timely and adequate care for Burton's injuries. *See Melton*, 841 F.3d at 1223 ("In our decisions, conduct deliberately indifferent to serious medical needs has included: . . . medical care that is so cursory as to amount to no treatment at all."). A reasonable jury could conclude that, armed with knowledge of Burton's injuries, Espino disregarded a substantial risk of harm when he kicked Burton out of his office after just a 90-second consultation and waited months to provide even minimal treatment.

### 3.    Espino's Conduct, on the Record, Amounted to Subjective Recklessness and was not Reasonable

A reasonable jury could conclude Espino's 90-second "consultation" with Burton, as well as his failure to provide any meaningful treatment afterward, was unreasonable and constituted subjective recklessness. First, Espino provided no meaningful treatment for Burton's head injuries. *See Melton*, 841 F.3d at 1223. Espino was aware that Burton had a history of seizures, sustained a head laceration, suffered two seizures after experiencing this head trauma, and was in great pain. (Doc. 22 at 13-14; Doc. 112-4 at 14; Doc. 112-5 at 1). Espino's response to this information—kicking Burton out of his office after just 90 seconds because Burton

17

previously filed grievances, failing to order any scan or evaluation of Burton's head, and only six months later ordering labs for Burton's seizure medication—creates at least a genuine dispute that Espino acted unreasonably.

Second, Espino's conduct was unreasonable because he denied medical care to Burton for non-medical reasons. Burton averred that Espino ended his April 23 initial consultation after just 90 seconds for an *expressly* non-medical reason, stating "I got your grievances! [H]e's done," and "Think about that next time you write a grievance[.] Get him out of here!" (Doc. 22 at 14). Denying medically necessary care for non-medical reasons establishes a case of deliberate indifference. *See Johnson v. Lewis*, 83 F.4th 1319, 1328 (11th Cir. 2023) ("There are genuine disputes of material fact as to whether Dr. Ferrell's reasons for delaying treatment were non-medical or even pretextual."). For either or both of these reasons, a reasonable jury could conclude Espino's conduct amounted to subjective recklessness.

## C.  Espino's Conduct Caused Burton Harm

"As with any other claim brought under § 1983, to succeed, the inmate must demonstrate a causal connection between the prison official's conduct and the Eighth Amendment violation." *Rodriguez v. Sec'y of the Dep't of Corr.*, 508 F.3d 611, 617 (11th Cir. 2007). The record evidence established that Burton did so here.

Espino's "'deliberate indifference to [the] serious medical needs of [Burton] constitutes the unnecessary and wanton infliction of pain' in violation of the Eighth

18

Amendment." *Stalley*, 124 F.4th at 1283 (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Because Espino was Burton's treating physician—and failed to provide adequate care to Burton at the April 23, 2020 consultation and beyond—the requirement for a causal nexus is met. *See Melton*, 841 F.3d at 1229 ("[C]ausation can be shown by personal participation in the constitutional violation." (citing *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1327 (11th Cir. 2007)).

Despite this, the district court concluded Burton "has presented *no* evidence showing Espino's conduct resulted in Plaintiff suffering an increase in seizures or any other harm related to his head wound or epilepsy." (Doc. 114 at 24 (emphasis added)). But the district court ignored record evidence that Espino's failure to provide care caused Burton to "needlessly suffer severe pain." *See Melton*, 841 F.3d at 1227. Espino should not be rewarded simply because Burton did not experience a third seizure or more significant injuries after Espino's failure to provide care. *Cf. Brooks v. Powell*, 800 F.3d 1295, 1301 (11th Cir. 2015) ("[W]e will not allow the advantage of hindsight to determine whether conditions of confinement amounted to cruel and unusual punishment." (quotation marks omitted)).  Indeed, "prison officials may violate the Eighth Amendment's commands by failing to treat an inmate's pain." *McElligott v. Foley*, 182 F.3d 1248, 1257 (11th Cir. 1999). For example, this Court "recognized that the delay of a few hours in treating an inmate's broken foot could constitute a violation of the Eighth Amendment" because "the

failure to treat the pain from a broken foot, even for a few hours, was a constitutionally cognizable injury." *Id.* (citing *Brown v. Hughes*, 894 F.2d 1533 (11th Cir. 1990)).

Here, record evidence established that Burton was beaten on April 21, 2020, suffered multiple seizures, and complained of significant pain. Yet, Espino failed to treat Burton's head injuries on April 23, 2020, resulting in Burton's continuing head pain not just for hours, but for at least several days. Following the April 23 consultation, Burton was forced to file sick calls and grievances—documents similar to those that resulted in the denial of his treatment to begin with—in an effort to seek care for his head injuries and continuing pain. (*See* Doc. 22 at 14; Doc. 22-3 at 5 (April 24, 2020 grievance, stating "[M]y head has been bust open and I keep catching headaches. I'm in great pain every day."); Doc. 22-2 at 3 (April 27, 2020 sick call, stating "I am in great pain[.] I can't sleep at nights due to my head hurting . . . . I wasn't prescribed any pain medication.")).[7]

---

[7] Even if Burton had escaped Espino's lack of care without this pain, the district court still erred. "[N]ominal damages are available [under § 1983] when a plaintiff alleges that [his] constitutional rights were violated." *Moms for Liberty v. Brevard Pub. Sch.*, 118 F.4th 1324, 1330 (11th Cir. 2024); *Brooks*, 800 F.3d at 1303, 1309-10 (holding that, despite the absence of a specific physical injury, a prisoner's § 1983 Eighth Amendment claim could proceed as to nominal damages); Fed. R. Civ. P. 54(c) (noting that, except for default judgments, "[e]very other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings").

Record evidence established that Burton met the causation element of his medical deliberate indifference claim as to his head. For the reasons above, the district court erred by entering summary judgment in favor of Espino on this claim.

## II.    Burton's First Amendment Retaliation Claim

"Prison officials violate a prisoner's First Amendment rights to free speech and to petition the government by punishing that prisoner for filing a grievance concerning the conditions of his im-prisonment." *Christmas v. Nabors*, 76 F.4th 1320, 1333-34 (11th Cir. 2023) (quotation marks omitted). A prisoner need establish three elements to make out such a claim: (1) "that his speech or act was constitutionally protected," (2) "that the defendant's retaliatory conduct adversely affected the protected speech," and (3) "that there is a causal connection between the retaliatory actions and the adverse effect on speech."[8] *Id.* (quotation marks omitted). Record evidence established Espino twice withheld medical care from Burton *expressly* because Burton had filed grievances.  The district court erred in finding otherwise.

---

[8] As the district court correctly found, and as was undisputed below, Burton engaged in constitutionally protected speech by filing grievances. (*See* Doc. 114 at 24; Doc. 112 at 23); *see also Christmas*, 76 F.4th at 1334 ("Christmas's allegations satisfy the first element because he engaged in protected speech when he filed grievances and asked for access to outdoor recreation.").

### A. Espino Twice Denied Medical Care Based on Burton's Grievances, Which is Likely to Deter a Person of Ordinary Firmness from Engaging in Constitutionally Protected Speech

Viewing the record in the light most favorable to Burton, Espino twice engaged in textbook retaliatory conduct by denying medical care due to grievances Burton had filed. Withholding medical care constitutes conduct likely to deter a person of ordinary firmness from engaging in protected speech. And on both occasions, Espino himself connected the denial of care directly to Burton's grievances, which establishes the required causal connection for Burton's claim.

The first instance was Espino's April 23, 2020 90-second consultation with Burton following the beatings. Burton's Verified Complaint states that "[as] soon as [Burton] walked into Dr. G. Espino's office, Dr. G. Espino stated 'I got your grievances! [H]e's done.'" (Doc. 22 at 14). When Burton responded that he was in pain and had suffered two seizures, Espino replied, "Think about that next time you write a grievance[.] Get him out of here!" (*Id.*). The second instance occurred during a subsequent medical consultation on November 3, 2020. There, Espino denied Burton's orthopedic doctor's physical therapy referral, telling Burton, "I told you about writ[]ing those grievances on me[.] [G]et out of my office." (*Id.* at 15; *see also* Doc. 112-31 at 2 (Dr. Ryan's report, signed by Espino on November 2, 2020).

Withholding medical treatment is sufficiently adverse conduct to support a First Amendment retaliation claim, as it "would likely deter a person of ordinary

firmness from engaging in that speech." *Christmas*, 76 F.4th at 1334 (quotation marks omitted). In performing this adverse-conduct analysis, this Court does "not focus on the plaintiff's subjective, actual chilling," but rather "objectively assesse[s] the defendants' actions." *Bennett v. Hendrix*, 423 F.3d 1247, 1254 (11th Cir. 2005).

This Court has held that arguably less serious retaliatory conduct than denying medical care is sufficient to deter a person of ordinary firmness from engaging in constitutionally protected speech. For instance, "search of an inmate's cell and the destruction of his possessions and materials can support a First Amendment retaliation claim." *Williams v. Radford*, 64 F.4th 1185, 1192-93 (11th Cir. 2023). Further, in an unpublished opinion, a panel of this Court held that a detainee at a civil commitment center could state a plausible First Amendment retaliation claim by alleging that officials delayed his clinical treatment in response to his grievances. *Boatman v. Sawyer*, No. 21-10747, 2021 U.S. App. LEXIS 32583, *4 (11th Cir. Nov. 2, 2021); *see also*, *O'Brien v. Mich. Dep't of Corr.*, 592 F. App'x 338, 343 (6th Cir. 2014) (holding "delay in treatment and discontinuance of medication would likely deter a prisoner" from engaging in protected speech).

Viewing the record in the light most favorable to Burton, Espino engaged in express retaliatory conduct caused by Burton's protected speech that was likely to deter a person of ordinary firmness from engaging in protected speech.

**B.    The District Court Erred by Finding the Evidence Did Not Establish Espino's Retaliatory Motive**

The district court failed to consider the Verified Complaint as evidence when entering summary judgment in favor of Espino on this claim. *See Sears*, 922 F.3d at 1206; *Tolan*, 572 U.S. at 659. That was error.

The district court concluded that, "viewing the evidence in the light most favorable to [Burton], . . . the evidence does not show Espino denied Plaintiff medical care in retaliation for filing grievances." (Doc. 114 at 25). But the district court reached that conclusion without referring to, or even citing, Burton's Verified Complaint. (*See generally id.* at 24-25). Burton's Verified Complaint contained three separate statements by Espino that *expressly* tied the denial of medical treatment to Burton's grievances. First, at the April 23, 2020 consultation, Espino kicked Burton out of his office after, at most, 90 seconds, saying "I got your grievances! [H]e's done." (Doc. 22 at 14). Second, when Burton responded that he was in pain and had suffered two seizures, Espino replied, "Think about that next time you write a grievance[.] Get him out of here!" (*Id.*). And third, at a subsequent medical consultation on November 3, 2020, Espino denied Burton's orthopedic doctor's physical therapy referral, telling Burton, "I told you about writ[]ing those grievance[]s on me[.] [G]et out of my office." (*Id.* at 15).

Burton's Verified Complaint was proper evidence of Espino's retaliatory conduct and was sufficient to preclude summary judgment on the issue. *See Hall v.*

24

*Adm'r, Fla. Civ. Commitment Ctr.*, No. 21-13160, 2022 U.S. App. LEXIS 25206, *3 (11th Cir. Sept. 8, 2022) ("Hall's affidavit, though self-serving and uncorroborated, creates a factual issue about whether the officials acted with a retaliatory motive."). And, other than a blanket denial in the unverified answer, it was *undisputed* at summary judgment that Espino made these retaliatory statements. (*See generally* Doc. 73; Doc. 112 at 23). The district court erred by failing to consider this critical, uncontested evidence. Accordingly, this Court must reverse the district court's entry of summary judgment in favor of Espino on this claim.

## III.   Burton's Finger Claim

### A.    Burton's Finger Injuries Presented Objectively Serious Medical Needs

An inmate can make out an objectively serious medical need where he shows an injury "that has been diagnosed by a physician as mandating treatment." *See Gilmore v. Hodges*, 738 F.3d 266, 274 (11th Cir. 2013) (quotation marks omitted). Viewing the evidence in the light most favorable to Burton, after being beaten twice and sustaining visible injuries to his fingers, he suffered noticeable deformities, was provisionally diagnosed by a doctor with Boutonniere deformity, and was referred for physical therapy by an orthopedic doctor. Based on this, a reasonable jury could conclude that Burton's finger injuries constituted objectively serious medical needs.

Burton's medical records included an x-ray taken in July 2020 that indicated Burton had PIP joint flexion on fingers for his left and right hands, (*see* Doc. 112-

26), and a May 2023 x-ray that revealed a "tiny bone fragment or calcification" on his distal left fourth proximal phalanx. (Doc. 112-52 at 1). Beyond the x-ray evidence, a July 17, 2020 medical report (1) indicated Burton had finger deformities on both hands, (2) ordered x-rays, and (3) recommended physical therapy if deformities were found, which they were. (Doc. 113-1 at 2; *see also* Doc. 113-1 at 3 (July 27, 2020 x-rays noting deformities). In September 2020, Dr. Laubaugh found that Burton had 40-45 degree flexion contractions for his left ring and right index PIP joints, that he could not passively extend Burton's fingers, that his provisional diagnosis was that Burton had Boutonniere deformity, and that Burton should be referred to an orthopedist. (Doc. 112-30; Doc. 112-31 at 1). A month later, orthopedist Dr. Ryan noted these "contracture[s]" to Burton's left ring and right index finger PIP joints and referred Burton to physical therapy "to regain [range of motion]" to those fingers. (Doc. 112-31 at 2).

Record evidence indicated Burton had developing finger deformities and was referred by an orthopedist for physical therapy. This was sufficient to create a genuine dispute as to whether Burton presented an objectively serious medical need.

### B.    A Reasonable Jury Could Conclude Espino Denied Needed Medical Care for Non-Medical Reasons

The same three elements for the subjective inquiry set forth above for Burton's head claim also apply to his finger claim. *See Stalley*, 124 F.4th at 1283. And the record establishes a material dispute under all three elements.

26

1.    <u>Record Evidence Established Espino Had Subjective Knowledge of Burton's Developing Finger Deformities</u>

Record evidence indicates Espino was aware of Burton's developing finger deformities. On April 23, 2020, Espino signed the medical report documenting Burton's finger injuries from the beatings. (Doc. 112-4 at 14). That same day, Burton had a 90-second consultation with Espino, telling Espino that his fingers were in pain. (Doc. 22 at 14). Even a month later, Burton indicated that his finger injuries were "clear to see." (Doc. 22-2 at 4). Espino was also aware of the results of Burton's July 2020 x-ray, which showed "[n]ew right finger PIP joint flexion deformity" on Burton's left hand and "[f]lexion[]of the index and long finger PIP joints" on Burton's right hand. (Docs. 112-26, 112-33). And Espino signed orthopedist Dr. Ryan's report noting contractures at Burton's left ring and right index PIP joints and recommending physical therapy. (Doc. 112-31 at 2). This evidence creates a genuine dispute as to whether Espino was aware of Burton's developing finger deformities.

2.    <u>Record Evidence Established Espino Disregarded Burton's Developing Finger Deformities</u>

Viewed in the light most favorable to Burton, Espino was aware of Burton's developing finger deformities, as well as Dr. Ryan's recommendation that Burton receive physical therapy. Yet at his November 3, 2020 consultation with Burton, Espino disregarded these facts and denied Dr. Ryan's physical therapy referral, not for any medical reason, but in retaliation for grievances Burton had filed, stating, "I

told you about writ[]ing those grievances on me[.] [G]et out of my office." (Doc. 22 at 15). Based on this, a reasonable jury could conclude Espino disregarded Burton's objectively serious medical needs as to his fingers.

### 3. Record Evidence Indicates Espino Engaged in Subjective Recklessness by Denying Burton's Physical Therapy Referral for Non-Medical Reasons

"A defendant who unreasonably fails to respond or refuses to treat an inmate's need for medical care or one who delays necessary treatment without explanation or for non-medical reasons may also exhibit deliberate indifference." *Melton*, 841 F.3d at 1223. Here, there was a genuine dispute of material fact regarding Espino's subjective motivation for denying Burton physical therapy. Based on the Verified Complaint, at the November 3, 2020 consultation, Espino denied orthopedist Dr. Ryan's physical therapy referral because of grievances Burton had filed. (Doc. 22 at 15). Espino's version of events conflicted with Burton's, as Espino indicated physical therapy was denied because Burton's injuries were "not [an] approved condition." (Doc. 112-34).[9] Given these conflicting versions of events, the district court erred by not crediting Burton's account of this November 3, 2020 consultation. While this Court is "hard pressed" to find deliberate indifference where the adequacy of care is "the subject of *genuine, good-faith*

---

[9] Espino's rationale for denying physical therapy—that Burton's injuries were not an approved condition—is also contradicted by record evidence that Burton was *later* approved for physical therapy for his fingers. (Docs. 112-57, 112-58).

disagreement between healthcare professionals," the district court erred here by characterizing the parties' dispute as a mere difference in medical opinion. *See Hoffer v. Fla. Dep't of Corr.*, 973 F.3d 1263, 1273 (11th Cir. 2020) (emphasis added); *see also* (Doc. 114 at 22). Crediting Burton's account, he was denied physical therapy for grievances he had filed, not because of any genuine or good-faith medical opinion Espino held.

### C.    Espino's Conduct Caused Burton Harm

Genuine disputes of material fact existed as to whether Espino's denial of physical therapy worsened Burton's finger deformities. The district court recognized there was record evidence that Burton's finger deformities worsened after Espino's denial of physical therapy—a record copy of Burton's May 2023 x-ray was interpreted as showing a "[t]iny bone fragment or calcification" in his left ring finger. (*See* Doc. 112-52 at 1; Doc. 114 at 22). Yet, the district court concluded the timing and cause of this continuing deformity was "unclear" and was connected to Espino only through speculation. (Doc. 114 at 22-23).

But viewing the record in the light most favorable to Burton, a reasonable jury could conclude Espino's denial of Dr. Ryan's physical therapy referral caused Burton's finger deformities to worsen. *Feliciano*, 707 F.3d at 1248 (noting this Court must "resolve all reasonable doubts about the facts in favor of the non-movant"). Because Espino was Burton's treating physician—and failed to provide adequate

care by denying an orthopedist's physical therapy referral for non-medical reasons—the requirement for a causal nexus is met. *See Melton*, 841 F.3d at 1229.

For the above reasons, the district court erred by entering summary judgment in favor of Espino on this claim.

## <u>CONCLUSION</u>

Based on the foregoing, Mr. Burton respectfully submits that the district court erred in granting summary judgment in favor of Espino as to each of Burton's claims. The district court both failed to consider record evidence at summary judgment—most notably, Burton's Verified Complaint—and failed to view this evidence in the light most favorable to Burton.  Accordingly, the district court's entry of summary judgment in favor of Espino is due to be reversed.

Respectfully submitted, this 28th day of May, 2025.

/s/   Bryan Lutz
Bryan Lutz
Calvin Hart
ALSTON & BIRD LLP
1201 West Peachtree Street, NE
Atlanta, GA 30309-3424
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
bryan.lutz@alston.com
calvin.hart@alston.com

*Court-Appointed Counsel for Appellant*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this brief complies with the type-volume limitations provided in Fed. R. App. P. 32(a)(7) because it contains 7,231 words, excluding the portions of the brief exempted by Fed. R. App. P. 32(f) and Eleventh Cir. R. 32-4.

This brief complies with the type-face and style requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in proportionally-spaced typeface in 14-point Times New Roman font.

Respectfully submitted this 28th day of May, 2025.

/s/  Bryan Lutz
Bryan Lutz
Calvin Hart
ALSTON & BIRD LLP
1201 West Peachtree Street, NE
Atlanta, GA 30309-3424
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
bryan.lutz@alston.com
calvin.hart@alston.com

*Court-Appointed Counsel for Appellant*

### CERTIFICATE OF SERVICE

I certify that on May 28, 2025, I electronically filed this OPENING BRIEF OF APPELLANT with the Clerk of Court for the United States Court of Appeals for the Eleventh Circuit by using the CM/ECF system, which will automatically provide a copy of this filing to all counsel of record.

A copy of the foregoing has also been sent by first class U.S. mail, postage prepaid to the following:

> Mr. Jonathan Michael Burton
> DC No. Y50899
> Florida State Prison – Inmate Legal Mail
> P.O. Box 800
> Raiford, FL 32083

This 28th day of May, 2025.

/s/  Bryan Lutz
Bryan Lutz
Calvin Hart
ALSTON & BIRD LLP
1201 West Peachtree Street, NE
Atlanta, GA 30309-3424
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
bryan.lutz@alston.com
calvin.hart@alston.com

*Court-Appointed Counsel for Appellant*